***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and this claim. Additionally, the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. American Risk Funding, through RSKCO, provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. Plaintiff's average weekly wages will be determined from a Form 22 to be submitted by defendants.
5. The date of the injury that is the subject of this claim is May 2, 2000.
6. The parties stipulated into evidence the Pre-Trial Agreement; plaintiff's medical records received up to the November 6, 2001 hearing; the Industrial Commission forms filed to date, including employer-defendant's report of injury and employer-defendant's admission of plaintiff's right to compensation pursuant to N.C. Gen. Stat. §97-18(b), which sets forth plaintiff's average weekly wage of $833.76, resulting in a weekly compensation rate of $555.84.
7. The parties stipulated to plaintiff's previous medical records from his prior back injury in July 1999.
8. The issues to be determined by the Commission are as follows:
 (a) Whether the Administrative Order of Executive Secretary Tracey H. Weaver dated June 25, 2001, was issued in error.
 (b) Whether the medical treatment that was requested by plaintiff was related to plaintiff's personal condition and not related to his compensable injury of May 2, 2000.
 (c) Whether Dr. Craig Brigham should remain plaintiff's authorized treating physician.
 (d) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 49 years of age. Plaintiff dropped out of high school in the ninth grade in Rock Hill, South Carolina, but later obtained a GED equivalent.
2. Plaintiff had been an employee of employer-defendant since October 12, 1999, as a carpenter foreman. The position required him to continuously lift, walk, stand, climb, bend, and twist his body as he worked along side the employees under his supervision constructing concrete forms for employer-defendant.
3. Plaintiff fell while working for a different employer in 1996, struck his left hip, and stayed out of work for approximately two weeks. Following that, he was in a supervisory position and did not have to do much in the way of heavy lifting. Sometime in July 1999, plaintiff's job duties changed with the previous employer and his job required some heavy lifting. On July 27, 1999, plaintiff reported to Dr. Donald H. McQueen, III, that he had pain radiating from his back down into his left leg and into his foot and ankle. An MRI showed a large left sided disc at L5-S1, and on August 12, 1999, plaintiff underwent an L5-S1 disc excision by Dr. McQueen.
4. By September 8, 1999, plaintiff was pain free and was back at his job doing his regular duties.
5. From September 8, 1999, until the date of this injury, May 2, 2000, plaintiff had no pain or limitations in his back and sought no treatment from any physician.
6. On May 2, 2000, a 13' x 5' piece of rebar fell on plaintiff hitting him on the lower right side of his back.
7. Plaintiff sought treatment again with Dr. Donald H. McQueen, III, after he was unable to get out of bed due to pain from the injury. Dr. McQueen took x-rays on May 24, 2000, which showed a nondisplaced fracture of the spinous process of L3. Dr. McQueen prescribed analgesics and rest, but plaintiff's pain persisted.
8. Plaintiff returned to his regular job with employer-defendant on June 12, 2000, but as a result of increased work activities, his pain and limitation increased and he was unable to work his job again as of July 3, 2000.
9. On July 17, 2000 Dr. McQueen noted that plaintiff had sustained an L5-S1 disc, producing pressure on and obscuring the left S1 nerve root as shown by an MRI dated July 10, 2000.
10. On July 28, 2000, plaintiff had a selective nerve root block of the left S1 nerve root by Dr. Richard I. Park of Southeast Pain Care, which did not help his pain.
11. Dr. McQueen referred plaintiff to Dr. Tsahakis in the Charlotte office of Miller Orthopaedic Clinic, but for reasons unknown, plaintiff saw Dr. Craig D. Brigham instead on August 17, 2000.
12. Dr. Brigham examined plaintiff on August 17, 2000, and immediately determined that plaintiff had suffered a recurrent disc herniation L5-S1 on the left, based upon the pre-op MRI, which revealed "a large disc herniation L5-S1 on the left."
13. On October 3, 2000, Dr. Brigham performed a left L5-S1 microdiscectomy. During surgery, Dr. Brigham found predominantly an epidural varix, redundant ligamentum flavum, and "very little in the way of recurrent disc herniation." It appears from the greater weight of the evidence that the rebar injury caused the disc to appear to be re-herniated, although the rebard caused an injury other than herniation. The October 3, 2000, surgery resulted from the admittedly compensable rebar incident and the surgery itself caused problems with scar tissue.
14. On October 26, 2000, plaintiff continued to feel aching in his left buttock and by November 16, 2000, plaintiff returned to Dr. Brigham continuing to complain of pain in his left leg. On that date Dr. Brigham indicated to plaintiff that it would be safe for him to return to work without restriction. However, Dr. Brigham did not return him to work at that time. Dr. Brigham continued physical therapy but on December 27, 2000, released plaintiff at maximum medical improvement without any restrictions and with a 2.5% permanent partial impairment rating to his spine related to the May 2, 2000, injury and a 5% rating related to the previous injury and surgery. Dr. Brigham had nothing further medically to offer plaintiff.
15. Based upon Dr. Brigham's statements, plaintiff returned to the employer on November 29, 2000, and attempted to work in the position of carpenter, which was a much heavier position than that of foreman, as his job as a carpenter foreman had been filled by someone else and no other foreman job was available. This was the only position available for plaintiff with the employer.
16. Plaintiff's job as a carpenter with Danis required him to lift up to 150 pounds, including lifting rebar, 2 x 8 forms, and gang panels, which plaintiff either had trouble performing or could not perform at all given his pain and limitations experienced. Prior to this injury of May 2, 2000, plaintiff had not experienced any problems performing these tasks together with those he supervised, although his previous job required less of this activity.
17. On December 15, 2000, plaintiff's supervisor, Chet Samuelson, handed plaintiff an employee separation notice, which indicated plaintiff was then terminated pursuant to a "reduction in force."
18. On December 15, 2000, employer-defendant filed an Industrial Commission Form 28 with the North Carolina Industrial Commission stating that plaintiff had been returned to work on November 29, 2000.
19. Danis's Form 28 is dated the same date of plaintiff's termination by Danis.
20. Danis's reduction in force or termination of plaintiff was at a time when he was unable to perform the job requirements of carpenter and Dr. Brigham had released plaintiff to return to the foreman position, with no restrictions. Danis did not notify Dr. Brigham of the change in job assignment and the fact his new position would require heavier lifting and activity.
21. Danis based its termination or suspension of benefits under the Act as of November 29, 2000, based upon Dr. Brigham's release to return to the position of foreman.
22. Plaintiff testified at the hearing that he attempted to find alternative work after he was terminated by Danis, but was unable to locate employment suitable to him from newspaper ads, the phone book, with former employers, as well as with his brother in Florida. Plaintiff has always worked in jobs requiring medium to heavy lifting.
23. On May 8, 2001, Plaintiff was seen by Dr. Michael D. Getter of Oweida Orthopedic Associates, whose impression of plaintiff's condition was failed back syndrome.
24. Dr. Getter recommended that plaintiff undergo a CT myelogram with flexion extension views or an MRI with gadolinium to determine if plaintiff had a large wad of scar tissue wrapped around his nerve or potentially some other compressive effect. Dr. Getter also suggested plaintiff either take Neurontin or Elavil if the CT myelogram indicated his problem was nonsurgical.
25. On May 23, 2001, plaintiff filed a Motion for Change of Treatment Pursuant to N.C. Gen. Stat. § 97-25 and Approval of Specific Treatment Pursuant to Rule 609.
26. On June 25, 2001, Executive Secretary Tracey H. Weaver entered an Administrative Order that plaintiff be allowed to change treating physicians to Dr. Michael D. Getter of Oweida Orthopedic Associates and that employer-defendant authorize the specific medical treatment recommended by Dr. Getter, which at that point was diagnostic to determine the cause of continued pain symptoms and the course of medical treatment.
27. On July 10, 2001, Dr. Getter gave plaintiff a work status report indicating he could return to work light duty with occasional standing, walking and sitting, no bending, squatting or climbing, and lifting, carrying, and pushing/pulling no greater than 15 pounds. Had plaintiff still been employed by employer-defendant at this time, no job would have been available to plaintiff within these restrictions.
28. On December 18, 2001, Dr. Getter re-examined plaintiff and read a new CT myelogram, which indicated a large amount of scar tissue at the L5-S1 disc space. Dr. Getter recommended a spinoscopy and prescribed Neurontin, 300 mg. On this date, Dr. Getter indicated plaintiff could not return to work.
29. Plaintiff required additional medical treatment after surgery with respect to the scar tissue, which was asymptomatic at the time of this injury and became symptomatic as a result of this injury and the second surgery by Dr. Brigham.
30. Employer-defendant refused to authorize any treatment with Dr. Getter, having appealed the Executive Secretary's Administrative Order by filing a Form 33 on July 9, 2001.
31. Plaintiff lost confidence in his treating physician, Dr. Craig Brigham, after Dr. Brigham indicated to plaintiff he had operated on plaintiff's spine for a recurrent HNP at L5-S1 and was unable to locate the herniation which had been identified on the MRI. Plaintiff was released by Dr. Brigham less than 60 days after surgery with no restrictions to a job requiring heavy physical labor and lifting up to 150 pounds.
32. The competent evidence in the record establishes that plaintiff is entitled to a change of his treating physician to Dr. Michael Getter.
33. Defendants terminated benefits under Form 28 based upon return to work at a foreman position, when the employer only offered plaintiff a carpenter position, a much heavier position that plaintiff could not perform given pain and limitation from his injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The undisputed evidence establishes that plaintiff requires additional medical treatment with respect to the scar tissue that was asymptomatic at the time of this compensable injury and which has become symptomatic as a result of the May 2, 2000, injury and second surgery by Dr. Brigham, and employer-defendant is responsible for payment for such ongoing medical treatment as may be reasonably ordered by Dr. Getter. N.C.G.S. § 97-25.
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have the Defendants pay for all medical treatment by Dr. Michael Getter of Oweida Orthopedic Associates incurred or to be incurred, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen plaintiff's disability. Plaintiff is entitled to have Defendants pay for all medical treatment through Dr. Getter previously incurred.
3. Since Dr. Michael Getter determined plaintiff was only able to work light duty with restrictions as of July 10, 2001, and as a result of plaintiff's compensable injury by accident and subsequent scar tissue which necessitated further medical treatment, plaintiff could not work his regular job with employer-defendant, plaintiff is entitled to receive temporary total disability compensation benefits at the rate of $555.84 effective July 10, 2001 and continuing until plaintiff returns to work or until further order of the Industrial Commission.
4. Defendant improperly utilized an Industrial Commission Form 28 to support its cessation of benefits in the present situation. The Defendants did not advise Dr. Brigham that it had offered plaintiff the carpenter position instead of his job of foreman. In the present case, the defendants knew Dr. Brigham had not released Plaintiff to return to work at full duty as a carpenter as of the date of the filing of the Form 28 and should not have terminated benefits to plaintiff until Dr. Brigham had released plaintiff to return to work for full duty as a carpenter after review of a job description for that position.
5. Plaintiff is entitled to a change of treating physicians to Dr. Michael Getter.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all of plaintiff's medical expenses incurred or to be incurred, including those of Dr. Michael Getter, for so long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of Plaintiff's disability. Plaintiff is entitled to have defendants pay for all previously incurred medical expense through Dr. Michael Getter.
2. Plaintiff is entitled to a change of treating physician at defendants' expense to Dr. Michael Getter.
3. Defendants shall pay plaintiff temporary total disability compensation at the rate of $555.84 beginning July 10, 2001, and continuing until plaintiff returns to work or until further order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum.
4. As plaintiff has not yet completed the healing period for his back, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any, for his back, which may be due, either party may request a hearing before the Commission to resolve this issue.
5. Counsel for plaintiff shall continue and is hereby ORDERED to monitor submission of medical expenses to employer-defendant.
6. Defendants shall pay the costs of this matter.
This 20th day of December, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER